IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**WELLS FARGO BANK, N.A.**                                                                                  PLAINTIFF
*as Trustee For Morgan Stanley Capital I Trust*
*2016- UBS 12, Commercial Mortgage Pass-Through*
*Certificates, Series 2016-UBS 12*

v.                                            CASE NO. 4:22-CV-00180-BSM

**PF ALLIED GARDENS LLC,** *et al.*                                                                    DEFENDANTS

### ORDER

Wells Fargo Bank, N.A.'s motion for summary judgment [Doc. No. 50] is granted and the amount of damages owed to Wells Fargo will be determined after further briefing.

I. BACKGROUND

PF Allied Gardens LLC, PF Jefferson Manor LLC, PF Northwest Acres LLC, and PF Terrace Green LLC ("Borrowers") own and operate four multi-family apartment complexes ("Apartment Complexes"). Pl.'s Statement of Facts ¶ 20, Doc. No. 52 ("SOF"). Borrowers received an $18,500,000 loan from UBS AG ("Loan") pursuant to a loan agreement dated October 31, 2016 ("Loan Agreement"). SOF ¶¶ 21–22; Mot. Summ. J. Ex. 1, Doc. No. 50 ("MSJ"). On the same day, Borrowers executed an $18,500,000 promissory note securing the Loan ("Note"). SOF ¶ 23; MSJ Ex. 2. Borrowers also entered into three mortgages on the Apartment Complexes ("Mortgages"). SOF ¶¶ 24, 27 & 30; MSJ Exs. 3, 4 & 5. The Mortgages granted UBS mortgage interests in the Apartment Complexes and security interests in all of Borrowers' personal property other than fixtures "within or about" the real property subject to the Mortgages ("Personal Property"). SOF ¶¶ 24–25, 27–28, 30–31;

Mortgages §§ 1.1(a) & (g). Chaim Puretz, who has an indirect ownership interest in each of the Borrowers, guaranteed the Loan ("Guaranty") to UBS. SOF ¶¶ 8–15, 35; MSJ Ex. 7. UBS assigned the Loan, Loan Agreement, Note, Mortgages, Guaranty, and other related documents to Wells Fargo. SOF ¶¶ 36–37. The assignments are undisputed. SOF ¶¶ 36–43.

The Loan Agreement requires Borrowers to deposit rent payments daily into a clearing account, whose proceeds are to be transferred daily to a cash management account, from which Wells Fargo is to withdraw debt service payments[1] and other amounts owed. Loan Agreement §§ 2.7.1(a)–(c), 2.7.2(a)–(b), MSJ Ex. 1. The Loan Agreement gives control of these accounts to Wells Fargo. *Id.* §§ 2.7.1(a), 2.7.2(a). The Note, Loan Agreement, and Mortgages permit Wells Fargo to declare the Loan immediately due and payable and to foreclose on the Apartment Complexes and Personal Property when Borrowers default on their obligations. Note § 2, MSJ Ex. 2; Loan Agreement §§ 10.1(a), (b); Mortgages §§ 7.1, 14. The Loan Agreement also provides that Borrowers become personally liable for the debt when a "springing recourse" event occurs. Loan Agreement §§ 11.22(1)–(10). The Guaranty makes Puretz personally liable for the debt when a "springing recourse" event occurs. Guaranty §§ 1.1(a)–(b), MSJ Ex. 7.

Although Borrowers did not strictly comply with the terms of the Loan Agreement and other related contracts between 2016 and 2020, Wells Fargo did not demand compliance.

---

[1] "Debt service payments" include principal and interest payments on the Loan, tax and insurance escrow requirements, funds for a capital expense reserve, and funds for a bank account maintenance fee. *See* SOF ¶¶ 72–73.

Declaration of Chaim Puretz ¶¶ 7–12, Defs.' Resp. Mot. Summ. J. 9 & Ex. 2, Doc. No. 56. In November 2020, however, Wells Fargo's third-party asset manager determined that Borrowers failed to place sufficient funds in the cash management account to pay their monthly debt service payments. SOF ¶¶ 71–74; Loan Agreement § 1.1. Borrowers dispute this finding but present no evidence countering the asset manager's declaration and supporting account statement showing the shortfall. *Compare* Declaration of Kaveh Saberi ¶¶ 52–55, MSJ Ex. 16; Deposit Account Statement, MSJ Ex. 24 *with* Resp. to Statement of Facts ¶¶ 72–75; Defs.' Resp. Mot. Summ. J. Ex. 1; Puretz Decl. ¶¶ 6, 14–15.

In November and December 2020, Wells Fargo sent two default letters to defendants notifying them of the failure to make debt service payments. MSJ Exs. 13 & 14. These letters advised defendants that they were in violation of the Loan Agreement's requirements that they: (1) deposit all rents from the Apartment Complexes into the clearing account within one business day of their receipt; and (2) provide required financial documentation on a regular basis. *Id.*; Loan Agreement §§ 2.7.1(b), 4.1.6(b)–(c). Despite notice, the account balance shortfalls continued. SOF ¶¶ 77–80, 82–85, 87–89, 91–96, 98–103; Deposit Account Statement (showing shortfalls from December 2020 through April 2021). On April 28, 2021, Wells Fargo notified defendants that it was accelerating the Loan because defendants were in default on the debt service payment, rent deposit, and financial reporting obligations. SOF ¶ 104; MSJ Ex. 15.

Wells Fargo filed suit in state court and the case was removed. *See* Doc. Nos. 1 & 2. Wells Fargo amended its complaint to allege additional defaults including: (1) failure to

3

account for all rents received; (2) failing to maintain Borrowers in good standing as Arkansas LLCs; (3) allowing property and casualty insurance on the Apartment Complexes to lapse; (4) changing property management without Wells Fargo's consent; and (5) permitting creditors to place liens on one of the Apartment Complexes. Am. Compl. ¶ 63, Doc. No. 35.

Wells Fargo is moving for summary judgment, requesting: (1) judgment against Borrowers for breach of contract; (2) replevin of Borrowers' Personal Property and authority to sell it; (3) foreclosure on the Mortgages; and (4) judgment against Puretz for breach of guaranty. Br. Supp. Mot. Summ. J. 5, 48, Doc. No. 51. Defendants dispute specific breaches and argue the other allegations are not material breaches of contract. Defs.' Resp. Mot. Summ. J. 4–5.

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party may not rest upon the mere allegations or denials in his pleadings. *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute requiring a trial. *Id.* A material fact is one that affects the outcome of the suit and a genuine issue exists with respect to a material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. All reasonable inferences must be drawn in a light most

favorable to the nonmoving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). The evidence is not weighed, and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

## III.  DISCUSSION

### A.  Borrowers' Breach of Note and Loan Agreement

Summary judgment is granted on Wells Fargo's breach of Note and Loan Agreement claims against Borrowers.

To prevail on its breach of contract claims, Wells Fargo must prove that: (1) a contract exists; (2) Wells Fargo performed its contractual obligations; (3) Borrowers breached their contractual obligations; and (4) the breach resulted in damages. *34-06 73, LLC v. Seneca Ins. Co.*, 198 N.E.3d 1282, 1287 (N.Y. 2022); *see* Note § 9 (applying New York law per choice of law provision); Loan Agreement § 11.3 (same). The first element is undisputed. SOF ¶¶ 20–32, 35–43. As to the second, Wells Fargo has established that it properly gave notice of the initial defaults and was not obligated under the Note or Loan Agreement to give notice of later ones. *See* Br. Supp. Mot. Summ. J. 43–44; MSJ Exs. 13–15; Loan Agreement §§ 10.1(a), (b). As to the third element, Wells Fargo argues that Borrowers breached the Note and Loan Agreements by causing or permitting eight events of default, as described in detail above. Borrowers only dispute four of these: (1) the debt service payment shortfall; (2) the failure to deposit all rents; (3) the failure to maintain Borrowers in good standing; and (4) the lapse in insurance coverage.

First, the undisputed evidence is that Borrowers breached the Loan Agreement's and

Note's requirements regarding debt service. In support of this claim, Wells Fargo has presented a declaration and supporting documentation that on the November 2020 due date and on subsequent monthly due dates there were insufficient funds in the cash management account to pay Borrowers' monthly debt service payments. SOF ¶¶ 71–74; Loan Agreement §§ 1.1, 2.3.1, 2.7.3; Note § 1. Borrowers argue that the account statements are ambiguous as to whether there was ever any shortfall in the cash management account. Defs.' Resp. Mot. Summ. J. 11. The account statement, however, confirms that there was a shortfall on November 6, 2020, and in subsequent months. *See* Deposit Account Statement. Each monthly shortfall is a default under the Note and Loan Agreement. Loan Agreement §§ 10.1(a)(i); Note § 2.

    Second, there is a factual dispute as to whether Borrowers breached the requirement that they deposit all rents. This is true although Borrowers admit that every year they withheld millions of dollars in rent receipts from the clearing account, in violation of the Loan Agreement. SOF ¶¶ 51, 54, 57, 60, 63–66; Loan Agreement § 2.7.1(b). Indeed, although Wells Fargo notified Borrowers of this breach, Borrowers failed to cure it within ten days as required by the Loan Agreement. SOF ¶ 75; MSJ Ex. 13; Loan Agreement § 10.1(a)(xxi); Note § 2. Despite what is seemingly a clear case of default, a dispute of fact exists as to whether Wells Fargo waived default. *See* Loan Agreement § 2.7.1(b). Even though the Loan Agreement contains a specific no-waiver clause, *see* Loan Agreement § 11.5, New York law provides that a waiver may still be established "by the parties' course of conduct or actual performance." *McGuire v. McGuire*, 153 N.Y.S.3d 280, 286 (N.Y. App.

Div. 2021). Wells Fargo accepted only a monthly debt service payment from Borrowers for years, and whether this course of dealing waived default is an issue for the fact-finder. *See* Defs.' Resp. Mot. Summ. J. 9.

Third, it is undisputed that Borrowers failed to consistently remain in good standing under Arkansas law because Borrowers admit that from time to time their LLCs were not in good standing. In fact, Borrowers admitted in the Answer that the LLC status of three of the Borrowers had been revoked as of April 2023. *See* Am. Compl. ¶¶ 5, 13, 15; Answer ¶¶ 5, 13, 15. Borrowers, however, represent that they are in good standing now. Puretz Decl. ¶ 18. It is therefore undisputed that Borrowers have defaulted on these provisions of the Note and Loan Agreement. Loan Agreement §§ 3.1.24(a), 10.1(a)(xiv), (xxi); Note § 2. Despite this finding, this default alone would not support a grant of summary judgment in favor of Wells Fargo.

Fourth, whether Borrowers let the Apartment Complexes' insurance lapse is disputed because the parties have presented conflicting declarations but no documentation confirming either account. *See* Saberi Decl. ¶ 98; Puretz Decl. ¶ 19.

Defendants raise a general materiality defense to the remaining defaults. They argue that these defaults were "hyper technical" and "non-material," and that it would be unfair to accelerate a loan worth tens of millions of dollars because of them. Defs.' Resp. Mot. Summ. J. 2–5. In New York, however, any monetary default—that is, one with respect to the borrower's obligation to pay principal or interest—is grounds for acceleration in all but "truly extraordinary circumstances." *In re 53 Stanhope LLC*, 625 B.R. 573, 584 (Bankr.

S.D.N.Y. 2021). Borrowers' failures in several consecutive months to place adequate funds in the cash management account to cover their debt service payments by the due dates were indisputably monetary defaults. Thus, Wells Fargo is entitled to accelerate the Loan. For this reason, it is irrelevant that issues of fact exist as to two events of default and unnecessary to determine whether the remaining non-monetary defaults were material. *But see 53 Stanhope*, 625 B.R. at 586 (liens placed on property in violation of mortgage were "valid basis for acceleration and the enforcement of default interest under New York law").

Borrowers are personally liable for the Loan because several springing recourse events occurred. Loan Agreement §§ 11.22(1)–(10). A "springing recourse provision" causes a borrower's or guarantor's personal liability to spring into existence if a defined undesirable event occurs. *See* Michael T. Madison et al., 2 Law of Real Estate Financing § 15:6. Such events occur under the Loan Agreement when one or more of the Borrowers fails to: (1) "provide financial information," (2) "maintain its status as a single purpose entity," or (3) "obtain [Wells Fargo's] prior consent to any Indebtedness or voluntary Lien encumbering [one of the Apartment Complexes]." Loan Agreement § 11.22. There is no genuine dispute that several of these events occurred: (1) Borrowers failed to provide financial information, SOF ¶¶ 117–18; (2) multiple liens were placed on one of the Apartment Complexes without prior consent, SOF ¶¶ 135–37; and (3) several of the Borrowers were not maintained in good standing. SOF ¶ 125; Am. Compl. ¶¶ 5, 13, 15; Answer ¶¶ 5, 13, 15. Based on these provisions, Wells Fargo is entitled to the unpaid principal, interest, and other fees and costs.

Borrowers' failure to pay amounts owed under the contracts establishes the damages element of Wells Fargo's breach of contract claim. *See KeyBank Nat'l Ass'n v. Beauty Quest Skincare, LLC*, No. 1:21-CV-778, 2022 WL 1488676, at *4 (W.D.N.Y. May 11, 2022). The amount of damages is taken under advisement and Wells Fargo has fourteen days to brief the issue and submit an updated chart in support of its damages claim containing, with respect to each category of relief: (1) references to the specific contractual provision or provisions entitling it to that form of relief; and (2) documentation supporting the amounts provided, including explanation where necessary. *See* SOF ¶ 140. Defendants have seven days from the day that Wells Fargo files its brief to respond.

B.   Breach of Guaranty

Summary judgment is granted on Wells Fargo's breach of guaranty claim against Puretz because Puretz guaranteed the entire amount due under the Loan if a springing recourse event occurred. Guaranty §§ 1.1(a)–(b); Loan Agreement § 11.22. As set forth above, several springing recourse events have occurred. *Supra* § III.A. Puretz has raised no defenses other than the general argument that there was no breach of contract. Defs.' Resp. Mot. Summ. J. 19. Puretz is therefore jointly liable with Borrowers for the entire amount owed to Wells Fargo.

C.   Foreclosure of Mortgage

Summary judgment is granted on Wells Fargo's right to foreclose claim. Borrowers agreed that "[u]pon the occurrence and during the continuance of any Event of Default [as defined in the Loan Agreement] . . . [Wells Fargo] may take such action, without notice or

demand, as it deems advisable to protect and enforce its rights against [Borrowers] and in and to the Property," including by instituting "proceedings, judicial or otherwise, for the complete foreclosure of this Security Instrument." Mortgages §§ 7.1, 14. Given the undisputed defaults already detailed, Wells Fargo is entitled to foreclose on the Mortgages.

D.  Foreclosure of Personal Property

Summary judgment is granted on Wells Fargo's replevin claim. In the Mortgages, Borrowers granted Wells Fargo a security interest in all their personal property other than fixtures "within or about" the real property subject to the Mortgages (the "Personal Property"). Mortgages §§ 1.1(a) & (g). Original lender UBS perfected this interest by filing a UCC financing statement that was assigned to Wells Fargo and properly continued. SOF ¶¶ 26, 29, 32, 36. The Mortgages permit Wells Fargo to foreclose upon the property in which it has a security interest, including the Personal Property, "[u]pon the occurrence and during the continuance of" a default. Mortgages §§ 1.1, 7.1(b). Wells Fargo is therefore entitled to take possession of the Personal Property.

IV. CONCLUSION

For the foregoing reasons, Wells Fargo's motion for summary judgment is granted. Wells Fargo is owed damages in an amount to be determined after further briefing. Borrowers and Puretz are each liable for the full amount of such damages and Wells Fargo

may obtain relief by foreclosing on the Apartment Complexes and the Personal Property.

IT IS SO ORDERED this 16th day of February, 2024.

_____
UNITED STATES DISTRICT JUDGE