# **EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

WELLS FARGO BANK,
NATIONAL ASSOCIATION,
AS TRUSTEE FOR MORGAN STANLEY
CAPITAL I TRUST 2016-UBS12,
COMMERCIAL MORTGAGE
PASS-THROUGH CERTIFICATES,
SERIES 2012-UBS12                                                              PLAINTIFF

vs.                                              CASE NO. 4:22-CV-180-BSM

PF ALLIED GARDENS LLC;
PF JEFFERSON MANOR LLC;
PF NORTHWEST ACRES LLC;
PF TERRACE GREEN LLC;
CHAIM PURETZ; and
BOHN, INC. d/b/a LANGENWALTER
CARPET CARE                                                                    DEFENDANTS

## DECLARATION OF KAVEH SABERI
### IN SUPPORT OF PLAINTIFF'S MEMORANDUM REGARDING DAMAGES

I, Kaveh Saberi, declare as follows:

1. I am an Asset Manager at Rialto Capital Advisors, LLC ("Rialto"), the special servicer and attorney-in-fact for Plaintiff Wells Fargo Bank, National Association, as Trustee for Morgan Stanley Capital I Trust 2016-UBS12, Commercial Mortgage Pass-Through Certificates Series 2016-UBS12 ("Plaintiff") and am authorized to execute this Declaration on Plaintiff's behalf. I have personal knowledge of the facts stated herein, and they are all true and correct to the best of my knowledge.

2. The primary business of Rialto is to administer and service loans owned by other companies and entities, and to assist those companies and entities in recovering upon those loans.

3. From August 25, 2020 through the present, I have been the Asset Manager at Rialto responsible for the administration and servicing of the loan at issue in this action.

4.     In my capacity as Asset Manager at Rialto, I have access to, have acquired personal knowledge of, and am fully familiar with the facts and circumstances hereinafter set forth in this Declaration based upon my review of the Business Records (hereinafter defined). I have access to computer-generated Business Records, payment histories, and copies of loan documentation.

5.     I have personal knowledge of Plaintiff's and Rialto's Business Records, record making practices, and the manner in which such records are made, used, and kept. I have examined Plaintiff's and Rialto's relevant books, records, and documents regarding the matters that are the subject of this action and of this Declaration.

6.     As such, I make this Declaration based upon the knowledge of Plaintiff and Rialto, and based upon my own personal knowledge so obtained as the Asset Manager at Rialto responsible for the administration of the loan at issue in this action.

7.     I am familiar with Plaintiff's loan records and files relating to the loan originally made by UBS AG to defendants PF Allied Gardens LLC ("PF Allied Gardens"), PF Jefferson Manor LLC ("PF Jefferson Manor"), PF Northwest Acres LLC ("PF Northwest Acres"), and PF Terrace Green LLC ("PF Terrace Green," and collectively with PF Allied Gardens, PF Jefferson Manor, and PF Northwest Acres, the "Borrowers") in the original principal amount of $18,500,000.00 (the "Loan"). The Loan is guaranteed by defendant Chaim Puretz (the "Guarantor").

8.     In conducting its business, Rialto maintains the books and business records necessary to administer and service the Loan, including records from Plaintiff's predecessors-in-interest (the "Business Records"). The Business Records include, but are not limited to, loan documents, the current master servicer's (Midland Loan Services, a PNC Real Estate Business ("Midland")) and prior servicers' records, account ledgers, bank account statements, data

2

compilations, and electronically-imaged documents. To the extent that the records for the Loan were created by another servicer acting on Plaintiff's or its predecessor-in-interest's behalf, are original records maintained by Plaintiff's or Rialto's records custodian, or are electronic records maintained by one of Plaintiff's current or prior servicers, those records have been incorporated into Plaintiff's records in the regular course of business and are relied on by Rialto in conducting its business on behalf of Plaintiff. I regularly interact with the records custodian and Midland to retrieve loan documents and other Business Records.

9. The books and records pertaining to the Loan are maintained in the ordinary course of business, and the entries are made either: (a) at or near the time that the transactions reflected in those records occurred; or (b) by a computer or other similar digital means that contemporaneously records an event as it occurs.

10. The documents attached to this Declaration are true and correct copies of the Business Records made and maintained in the ordinary course of Plaintiff's, Midland's, and Rialto's business.

11. I provide this Declaration in order to set forth facts within the knowledge of Plaintiff, Rialto, and myself regarding the amount due and owing on the Loan, exclusive of attorneys' fees and costs incurred in this lawsuit, from the Borrowers, and the Guarantor pursuant to the Guaranty of Recourse Obligations (the "Guaranty"), to Plaintiff.

12. If called to testify, I could competently testify as to the facts contained within this Declaration.

## The Total Amount Due on the Loan

13. Rialto uses Microsoft Excel to calculate the amounts due and owing on the Loan. This type of system is recognized as standard in the special servicing industry. In this case, the

total amount due on the Loan, and the each component thereof, was calculated using Microsoft Excel. When properly operated, Microsoft Excel produces correct calculations of the amount owed on a particular loan taking into account all credits and debits, including interest which has accrued on the Loan. Microsoft Excel was properly operated in this case, and I have personally verified the accuracy of each calculation that comprises the total amount due on the Loan.

14. I have further personally calculated the amount owed by the Borrowers to Plaintiff on the Loan as set forth herein, exclusive of attorneys' fees and costs incurred in this lawsuit, which amount is also owed by the Guarantor to Plaintiff pursuant to the Guaranty.

15. As an Asset Manager, I regularly review, calculate, and verify the accuracy of the amount due on the loans I manage.

16. Attached hereto as **Exhibit 1** is a true and correct copy of the payment and transaction history for the Loan from October 31, 2016 (the date the Loan was made) to January 22, 2024. The "Batch (Posting) Date" column contains the date that the applicable transaction actually occurred, while the "Tran (Effective) Date" and "Due Date Affected" columns contain the applicable dates affected by the transaction.

17. Attached hereto as **Exhibit 2** is a true and correct copy of the payment and transaction history for the Loan from February 26, 2021 through February 26, 2024.

18. Attached hereto as **Exhibit 3** is a true and correct copy of the Payoff Demand Statement, dated February 29, 2024, which sets forth the amounts due on the Loan as calculated using Excel, exclusive of attorneys' fees and costs incurred in this lawsuit, as of March 6, 2024 (the "Payoff Statement"). Pursuant to the Payoff Statement, the total amount due on the Loan as March 6, 2024 is as follows:

| | |
|---|---|
| Unpaid Principal Balance | $17,186,725.58 |
| Accrued Interest | $2,412,550.80 |

4

| | |
|---|---:|
| Default Interest | $3,335,395.08 |
| Late Fees | $401,784.44 |
| Special Servicing Fees | $151,700.70 |
| Tax Advances | $194,144.91 |
| Insurance Advances | $623,269.34 |
| Property Protective Advances | $101,000.00 |
| Interest on Advances | $429,834.90 |
| Liquidation Fee | $219,260.82 |
| FPI Setup Fee | $500.00 |
| UCC Filing Fee | $104.50 |
| Cash Management Account Maintenance Fees | $14,000.00 |
| Contractual Yield Maintenance Default Premium | $807,751.53 |
| Payoff Fee | $4,500.00 |
| **Sub-Total** | **$25,882,522.60** |
| Less Total Reserves | ($210,765.09) |
| Less Amount Held in Cash Management Account/Lockbox | ($3,897,573.49) |
| **Total Payoff Amount as of March 6, 2024** | **$21,774,184.02** |

19. Per diem interest continues to accrue on the Loan in the total amount of $5,419.86, comprised of: (1) $2,265.31 per day at the contractual, non-default interest rate; and (2) $3,154.55 per day at the default interest rate.

20. As set forth in Exhibit 1 attached hereto, for the monthly payments due between December 6, 2016 and April 6, 2021, a total of $1,313,274.42 was applied to the $18,500,000.00 original principal balance of the Loan, resulting in an unpaid principal balance of the Loan of $17,186,725.58.

21. The contractual, non-default interest rate on the unpaid principal balance of the Loan is 4.745% per annum, calculated on a 360 day year. The total amount of contractual, non-

default rate interest that has accrued on the Loan between April 6, 2021 and March 6, 2024 is $2,412,550.80.

22. The contractual default interest rate is 9.745% per annum – 5% above the contractual, non-default interest rate of 4.745% per annum. Because interest at the non-default rate is already calculated, my calculation of default interest is based on the additional 5% per annum on the unpaid principal balance of the Loan and the overdue interest thereon.

23. Because the payment event of default occurred on November 6, 2020, my calculation of default interest starts on that date and is through March 6, 2024, for a total amount of default interest due to Plaintiff of $3,335,395.08.

24. A 5% late fee is due and was charged on the amount of each monthly loan payment that was not timely paid through March 6, 2024. As of March 6, 2024, the total amount of late fees is $401,784.44.

25. Pursuant to the Pooling and Servicing Agreement, dated December 1, 2016, true and correct excerpts of which are attached hereto as **Exhibit 4**, Plaintiff pays Rialto a special servicing fee equal to 0.25% per annum computed on a monthly basis on the Stated Principal Balance (as defined in the Pooling and Servicing Agreement) of the Loan, with a minimum special servicing fee of $3,500.00 per month. Attached hereto as **Exhibit 5** is a true and correct copy of my Excel calculation of the special servicing fees, which total $151,700.70, as incurred between September 2020 (the first month after the Loan was transferred to Rialto) and March 2024.

26. Following the acceleration of the Loan, Plaintiff advanced $194,144.91 to pay the property taxes for the properties securing the Loan.

27. On or about June 17, 2022, Borrowers failed to maintain property and casualty insurance for the properties securing the Loan. Plaintiff, through Rialto, obtained "force-placed"

property and casualty insurance on the properties to protect its interests. Through March 6, 2024, Plaintiff has incurred $623,269.34 in "force-placed" insurance advances. Attached hereto as **Group Exhibit 6** are true and correct copies of the invoices for the "force-placed" insurance.

28. In connection with obtaining "force-placed" insurance, Plaintiff also incurred an additional set-up fee of $500.00.

29. Since the Loan was transferred to Rialto on August 25, 2020 for special servicing, Plaintiff has incurred a total of $96,000.00 in expenses for property appraisals, comprised of: (1) $90,000.00 in appraisal fees; and (2) $6,000.00 in fees charged by Jones Walker LLP through which Plaintiff ordered the appraisals. Attached hereto as **Group Exhibit 7** are true and correct copies of the invoices for the property appraisals.

30. Since the Loan was transferred to Rialto on August 25, 2020 for special servicing, Plaintiff has incurred $5,000.00 in fees for annual property inspections. Attached hereto as **Group Exhibit 8** are true and correct copies of the invoices for the property inspections.

31. For the monthly loan payments due between May 6, 2021 and February 6, 2024, Plaintiff has advanced a total of $3,279,266.34 to its certificate holders for the $96,499.01 in monthly principal and interest payments due from the Borrowers.

32. As of March 6, 2024, Plaintiff charged a total of $429,834.90 in interest on advances for the property appraisals, property inspections, and principal and interest payment advances, calculated at the prime rate as published by the Wall Street Journal in effect between the date the advance was incurred through March 6, 2024. From the time the Loan was made on October 31, 2016 to the present, the prime rate has always been lower than the total contractual default interest rate of 9.745% per annum.

33. Pursuant to the Loan Agreement and the Pooling and Servicing Agreement, Plaintiff, on behalf of Rialto, is also due a liquidation fee of $219,260.82. The liquidation fee, calculated as of March 6, 2024, is equal to one percent (1%) of $21,926,082.26, which is the total amount due on the Loan exclusive of default interest, late fees, the liquidation fee itself, and attorneys' fees and costs incurred in this lawsuit.

34. Plaintiff has incurred $104.50 in filing, recording, and third-party filing service fees in connection with: (1) filing its UCC Continuation Statement with the Arkansas Secretary of State with respect to the Borrowers' personal property; and (2) recording its UCC Continuation Statements in the real property records of Pulaski, Sebastian, and Washington counties with respect to the UCC fixture filings.

35. The Arkansas Secretary of State's fee for filing the continuation statement was $6.00.

36. Attached hereto as **Exhibits 9, 10**, and **11**, are true and correct copies of the UCC Continuation Statements recorded in the real property records of Pulaski, Sebastian, and Washington counties, reflecting recording fees totaling $46.50. Plaintiff incurred $52.00 in third-party filing service fees for its UCC Continuation Statement filings.

37. As of March 6, 2024, Plaintiff is owed a total of $14,000.00 in Cash Management Account Maintenance fees calculated at $400 per month from May 2021 (the month following the acceleration of the Loan on April 28, 2021) through March 2024.

38. I personally verified the Yield Maintenance Default Premium calculation as described in the Loan Agreement, and determined that 5% of the principal amount of the Loan being prepaid as of March 6, 2024 is the greater of the two calculations described in the definition of Yield Maintenance Default Premium in the Loan Agreement. For purposes of this calculation,

the principal amount of the Loan that would have been due as of March 6, 2024, assuming all prior monthly payments had been made by the Borrowers, is used. That amount would have been $16,155,030.62 as of March 6, 2024 if the Borrowers had made all prior monthly payments. Five percent (5%) of $16,155,030.62 results in a Yield Maintenance Default Premium of $807,751.53 as of March 6, 2024. The other calculation described in the definition of Yield Maintenance Default Premium results in a yield maintenance premium of $103,815.21, which is less than $807,751.53.

39. In connection with the special servicing of this Loan and in connection with this lawsuit, it was necessary for Rialto to order payoff statements at various times. Plaintiff incurs a fee from Midland each time a payoff statement is ordered, and incurred a total fee of $4,500.00 for payoff statements.

40. As of February 29, 2024, Plaintiff is holding $210,765.09 in reserves and $3,897,573.49 in the Cash Management (Lockbox) Account. These amounts are credited to reduce the total amount due on the Loan. *See* ¶ 18.

41. I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 1, 2024.

Kaveh Saberi